BERNARD FOWLER

*v.*

JAMES REDICAN.

1. PAROL EVIDENCE—*to explain a written contract.* A vendor of certain lots of land signed a memorandum, in writing, as follows: " Chicago, June 20th, 1868, received of James Redican, to apply on the purchase of lots 14 and 15, block 15; 12 and 13, block 16, bought of B. F. Fowler, one hundred dollars. Price of four lots, $1170.33. If lots are not in location as represented, money to be returned to J. Redican at his option." The purchaser went into possession under the agreement, and made valuable improvements: *Held,* in a suit by the vendee to enforce the specific performance

of the contract, that from the incompleteness of the memorandum in itself, in expressing all the conditions of the contract, and the location of the lots, it was evidently the intention of the parties to reserve the right to supply its deficiencies by parol proof, and it was, therefore, competent for the vendee to show by parol the character of deed to be made, when the contract was to be executed, and the description and location of the lots, without asking a reformation of the instrument.

2.   Moreover, as the partial execution of the contract by the purchaser, through his possession and improvements, and payment of part of the purchase money, would have enabled him to enforce its specific execution had it rested entirely in parol, so, this instrument not purporting to express the entire agreement of the parties, could be made complete by parol evidence of those matters which were omitted.

3.   But it seems, where the contract on its face appears to be complete in itself, but misdescribes the property sold, parol evidence would not be admissible to correct such misdescription, except in a proceeding in equity to reform the instrument.

APPEAL from the Superior Court of Chicago; the Hon. JOHN A. JAMESON, Judge, presiding.

The opinion states the case.

Messrs. DENT & BLACK, for the appellant.

Mr. ARTHUR W. WINDETT, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

The bill, in this case, was filed by appellee in the superior court, against appellant, to compel a specific performance of a contract for the sale of several lots in the city of Chicago. It alleges, that on or about the first of June, 1868, appellant, claiming to be owner of lots 14 and 16, in block 15, and lots 12 and 13, in block 16, in Stinston's subdivision of blocks 15, 16, 17 and 18, in the south 60 acres of the E ½ of N E ¼ sec. 19, T. 39 N. R. 14 E. in Chicago, and being desirous of selling the lots, employed Thomas A. Hill & Co. as his agents and brokers to sell them. The bill, as first filed, described

the property as being in Sampson & Green's addition to Chicago, but, on leave of the court, the description was amended, after the proofs were taken, and leave was given to appellant to cross-examine the witnesses whose evidence had been taken.

The bill alleges, that about the twentieth of June, 1868, Hill & Co., as appellant's agents, offered to sell the lots to appellee for the sum of $1170.33; that appellee purchased them for that sum, and paid $100 on the price; that Hill & Co. gave to appellee a memorandum of the sale, by which the receipt of the $100 was acknowledged, to be applied on the purchase; that they agreed to furnish appellee an abstract, showing title in appellant, and clear and free from incumbrances at the time of the purchase, and thereupon appellee would, within a reasonable time, pay the balance of the purchase money, and, upon its being paid, appellant was to give appellee a warranty deed for the lots, duly executed and acknowledged; that, relying upon the contract, appellee, on or about the twenty-fourth of June, 1868, entered into and took possession of the lots, and has made large and valuable improvements thereon, by enclosing them with a fence, and by erecting two houses of the value of $500; that appellee has the sole and exclusive possession of the lots under the contract of purchase; that, on the first of July, 1868, appellee tendered to appellant the balance of the purchase money, but he refused to receive the same and to complete the contract by executing a deed for the lots. The bill prays that appellant be compelled to execute a deed, and appellee be allowed to pay the balance of the purchase money.

Appellant answered, and denies that, at the time mentioned in the bill, he claimed to own the lots, or that he employed Hill & Co., or any one else, as agents to sell them; denies that he ever received the $100, or any other sum, as a part of the purchase money on the lots; denies that he agreed to furnish an abstract of the title, or that he ever agreed to give appellee a warranty or any other deed; denies that appellee took possession under any contract made with appellant; that

if appellee has taken possession or made improvements on the lots, it was without appellant's knowledge or consent; denies a tender at the time alleged, or at any other time. He sets up and relies upon the statute of frauds; denies that he, or any one duly authorized, gave to appellee a memorandum, in writing, containing any agreement to convey to appellee the lots in controversy.

On leave, the bill was amended, and alleges that Hill & Co. were authorized by appellant to sell the premises, and that they made, signed and delivered to appellee this memorandum:

"CHICAGO, June 20, 1868.

"Received of James Redican, to apply on the purchase of lots 14 and 15, block 15; 12 and 13, block 16, bought of B. F. Fowler, one hundred dollars. $100.

"THOS. A. HILL & CO.

"Price of four lots $1170.33. If lots are not in location as represented, money to be refunded to J. Redican at his option.

"T. A. H. & CO."

It further alleges that appellant, at the time of the sale, was the owner, and if not the owner of the legal title, he was the owner of and held the equitable title to the lots, and had the right to sell and convey the same, or have them conveyed to appellee; that, if anything has been done by appellant to affect the legal title to the lots, it has been in bad faith, and through fraud and covin, and to hinder appellee in the assertion of his rights, under the contract. Appellant answered, substantially, as he had done to the original bill, and a replication was filed to the answers.

A hearing was had on the original and amended bills, answers, replications, exhibits and proofs, when the court below granted the relief prayed, and decreed that appellant execute and deliver to appellee a warranty deed for the lots within five

days, and within the same time appellee should pay the balance of the purchase money. The record is brought to this court, on appeal, for a reversal.

It is urged, that the memorandum given by Hill & Co. is so wholly wanting in a description of the premises sold, that the contract can not be enforced. It fails to locate the lots by reference to any city, town, plat or addition. It simply describes them by lots and blocks. And it is urged that, inasmuch as the statute of frauds was interposed, a resort to parol evidence can not be had to locate, or complete the description of the lots. As a general rule, a contract, or agreement in writing, can not be explained, contradicted or altered by parol evidence. But equity entertains jurisdiction to reform contracts when, from inadvertence or mistake, the written instrument fails to contain the entire agreement of the parties, and when thus reformed, the court, when it is necessary to the attainment of justice, will decree that it be specifically performed. But the bill, in this case, is not framed with a view to a reformation of this agreement.

It is, however, claimed that, as appellee went into possession of the property, and expended money in making lasting and valuable improvements, and paid a portion of the purchase money, the case is taken out of the statute of frauds, even if the entire agreement had been verbal, and much more so when parol evidence is only required to locate the lots named in the written memorandum, and to point out the city, and the addition in which they are situated. That the first part of this proposition is true, is abundantly sustained by adjudged cases, both in this country and Great Britain. But inasmuch as numbers of the lots and blocks are alone given in the writing, does that fact preclude appellee from proving by parol that they are in a certain addition to Chicago? Will the statute of frauds and perjuries, as construed, permit a purchaser to enforce a contract which rests entirely in parol, and prohibit another from proving that the property, not fully described in the memorandum, is situated at a particular place?

That the sale was made with the approbation of appellant, the evidence clearly establishes. Appellee, as soon as he learned the condition of the title, and it does not appear there was any unreasonable delay, offered to go on and complete the contract, but appellant declined, alleging he came too late, but he had done nothing to place appellee in default. He did not facilitate the matter by furnishing an abstract, but only referred him to that upon which he had purchased, and appellee seems not to have had the full benefit of it before it was taken from him. Nor did appellant furnish such a deed as appellee was bound to receive. Under such circumstances, a delay of two or three weeks was not unreasonable. .

We have seen that, had the agreement been in parol, equity would have given the relief, notwithstanding the statute of frauds, and, as this was merely a memorandum, not intended to embrace all of the terms and conditions of the contract, is manifest from its mere inspection, as well as the testimony in the case. No time is designated for it to be carried into effect; no time for the payment of the remainder of the purchase money, nor for the conveyance to be executed, nor was the character of the deed specified in the memorandum. But it is positively asserted that one hundred dollars had been paid by appellee on the purchase of four lots, the numbers of which are given, the amount of purchase money is specified, and it states the purchase was made of appellant. In this state of the case, it seems that there can be no reason why parol evidence may not be resorted to for the purpose of locating the lots, and to show when the contract was to be executed and the character of the deed to be given proved, in connection with the possession and improvement of the lots. If to decree a performance when the entire agreement is in parol, and in part executed by the purchaser, is not within the statute of frauds, we are at a loss to perceive how a case of this character can be within its provisions. Had the contract appeared to be full and complete when inspected, but misdescribed the lots, then the parties would have been compelled to proceed for its reformation before it could have been enforced.

The memorandum refers to representations not embodied in it, and it is manifest that the parties intended to, and understood they could, resort to parol to explain other terms and conditions. When the parties agree, by the writing itself, that parol evidence may establish terms and conditions not specified in the agreement, no one would question that such proof could be made, because such an agreement is made by the parties, and would not be in violation of the law. And in this case, it is manifest that such was the intention as to the representations as to location, and that is the turning point in this case. It refers to the representations as to location, and gives appellee the option to have his money refunded if they were not truly made. Had he refused to proceed with the agreement, and appellant had attempted to compel a specific performance, would any one, for a moment, doubt that he could, under the terms of the memorandum, have shown that the property was not located as represented, without showing fraud, and thus have exonerated himself from the contract? If this be so, it is by reason of the right being reserved in the memorandum to prove that fact by parol, and it seems equally manifest that if, by the writing itself, he can prove the location for one purpose, he may for another.

It is urged, that the proof fails to sustain the allegations of the bill. It is there alleged that the conveyance was to be by a good warranty deed, while the evidence does not show that, in all the negotiations, any reference was made to the character of the deed that was to be executed. But it may be inferred that such was the understanding of the parties, as appellant only required the amount of the purchase money above the incumbrances to be paid in hand, and the balance to be paid on time, and the offer of appellee to take a deed and assume the payment of the incumbrances, all tend to show that a warranty deed was intended. If a quit claim deed was to have been given, then there would have been an arrangement and an understanding that appellee was to pay the incumbrances, beyond the price he was to pay, but we

find no such agreement, or anything from which it could be inferred. We think the proof sustains the allegation that appellee was to have a warranty deed, and failing to find any error in this record, the decree of the court below must be affirmed.

*Decree affirmed.*